UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN H. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 02 C 8175 |
| | ) | |
| PRIMERICA LIFE INSURANCE COMPANY, | ) | |
| d/b/a PRIMERICA, a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Primerica Life Insurance Company ("Primerica") to strike the supplemental affidavit and to exclude any testimony of putative handwriting expert Curtis Baggett. For the reasons set forth herein, the motion is granted.

## BACKGROUND

Plaintiff Carolyn Brown ("Carolyn") is the widow of Terrance Brown ("Terrance"), son of Alberta Brown ("Alberta"). Before Carolyn and Terrance were married, Terrance purchased a life insurance policy from Primerica. Initially, Alberta was the named beneficiary of the policy. In 2000, after the couple married, Terrance

substituted Carolyn as the beneficiary. Approximately two years later, Terrance and Carolyn separated, and Terrance moved into his mother's home.

On August 23, 2002, a man identifying himself as Terrance Brown entered a Primerica office in Chicago. He informed the agent, Francis Giroux, that he wished to change the beneficiary of his life insurance policy from Carolyn back to Alberta. He also stated that he wanted to make his premium payment. Giroux elicited the necessary biographical information to complete the form, which was then signed. He did not request that the man produce any form of identification. A premium payment was also made via Western Union money order.

About two weeks later, Terrance drowned off the coast of Massachusetts.

According to the terms of the policy, a change of beneficiary is effective on the date that Primerica receives written notice from the insured that the change is desired. Based on the form Giroux submitted as well as an informal internal investigation, Primerica determined that a change of beneficiary had been effected on August 23 and that Alberta was the beneficiary of the policy at the time of Terrance's death. Accordingly, the proceeds of the policy were paid to Alberta.

Carolyn disputes the validity of the August 23 change of beneficiary. She contends that the man at Giroux's office was not Terrance and thus that the form he executed has no legal effect on the terms of the policy. According to Carolyn, the

operative document is the 2000 change of beneficiary, which names her, not Alberta, as the designated recipient of the policy proceeds. After various unfruitful conversations with Primerica in which she advanced the theory that the August 23 form was a forgery, Carolyn filed the instant suit, alleging that Primerica breached its contractual obligations under the policy by paying to Alberta rather than her.

Discovery was initially set to close on July 11, 2003. It was extended three times, to September 15, then November 17, and finally to December 1. On December 8, 2003, Primerica moved for summary judgment, and Carolyn followed suit at the end of the following February. In support of her motion, Carolyn supplied a four-paragraph affidavit from Baggett wherein he conclusorily opined that the August 23 signature was in fact a forgery. Primerica moved to strike the affidavit on the grounds that it was insufficient to satisfy Fed. R. Evid. 702. In conjunction with the reply for her motion for summary judgment, Carolyn filed a "supplemental" affidavit from Baggett, which set forth the same opinion embodied in the prior affidavit and provided some indication of the methods Baggett used to come to his conclusions. We ordered that Carolyn produce Baggett for a voir dire hearing to allow us to determine if Baggett was qualified to provide expert testimony. The hearing was postponed a number of times and as yet has not taken place.

Primerica filed the instant motion attacking the admissibility of Baggett's second affidavit for two reasons.[1] First, it argues that the opinion was not submitted in a timely fashion, making its exclusion mandatory under Fed. R. Civ. P. 37(c)(1). Second, it continues to press arguments with respect to the sufficiency of Baggett's qualifications and his proffered opinion.

## LEGAL STANDARDS

Rule 26(a)(2)(B) provides that expert witnesses must prepare and sign a written report containing a complete statement of all opinions to be expressed. The statement must provide the basis and reasons for the opinions, the data the expert considered in reaching the opinion, the witness's qualifications, and other specified information. Rule 26(e)(1) provides that if any correction or addition is necessary to provide complete disclosure of an expert opinion, that process must take place before the time for disclosure has expired under Rule 26(a)(3). The sanction for failure to abide by these rules can be substantial; Rule 37(c)(1) states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1)

---

[1] Primerica requested that the affidavit be stricken in the reply it filed in support of the motion to strike the original affidavit. Because Carolyn had no opportunity to respond to the arguments in the course of that briefing, we were unwilling to address the issue at that time. Thus, this is the first time that the request to strike is properly before us in a posture suitable for adjudication.

. . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Admissibility of expert testimony is governed by Fed. R. Evid. 702. The rule provides that if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case," the expert will be allowed to offer testimony regarding his or her opinion. When expert scientific testimony is proffered, the court must serve as a gatekeeper and exclude the testimony unless the expert's testimony is based on scientific knowledge rather than speculation, and the testimony will assist the trier of fact in determining a factual issue in the case. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993); Chapman v. Maytag Corp., 297 F.3d 682, 686 (7th Cir. 2002). Professed scientific knowledge will not be acceptable unless the expert employs the scientific method and supports the outcome with appropriate validation. Daubert, 509 U.S. at 590. The term "scientific" indicates "a grounding in the methods and procedures of science" and the term "knowledge" indicates "more than subjective belief or unsupported speculation." Porter v. Whitehall Laboratories, Inc., 9 F.3d 607, 613 (7th Cir. 1993). In determining whether testimony is based upon scientific knowledge and thus is reliable, the court should consider whether the hypothesis can and has been tested, whether the hypothesis

has been the subject of peer review and publication, the "known or potential rate of error" for the method or theory, and whether the scientific community generally accepts the hypothesis as true. Daubert, 509 U.S. at 594.

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

According to Primerica, the information contained in Baggett's supplemental affidavit was not disclosed to it until the affidavit was filed in conjunction with Carolyn's response to the motion to strike the initial affidavit. Carolyn does not dispute this contention; her only response is that the affidavit supplemented her prior disclosure and thus was proper under the rules. She relies upon the first sentence of Rule 26(e)(1), which states that "[a] party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Carolyn's argument fails for two independent reasons. First, as described above, Rule 26(a)(2) requires that experts provide a report containing a complete statement of the opinion to be proffered and the informational and methodological components that led to the ultimate opinion. Under Carolyn's formulation of the process, rather than

abiding by this rule in the first instance, a party can supply a vague and conclusory expert statement and wait to comply with this provision until a report is challenged in a motion to strike. This completely defeats the purpose of the disclosure process, making it possible to delay full disclosure until after the time for discovery has elapsed. As Primerica notes, this scenario is precisely what took place in this case, and it is foreclosed both from deposing Baggett or supplying its own expert to counter his conclusions. The prejudicial effect to Primerica of allowing Carolyn to benefit from this course of action is clear.

Second, as also described above, the second sentence of Rule 26(e)(1) specifically refers to the manner in which expert testimony is to be supplemented. It unequivocally states that any supplementation must be done within the time that disclosures are due under Rule 26(a)(3). Our direction to the parties was to complete all discovery, including anything pertaining to experts, by November 17, 2003. The supplemental affidavit, filed April 27, 2004, is not timely. Rule 37(c)(1) addresses the consequences of untimely disclosure. Unless the party proffering the information has a substantial justification for the failure to provide it in a timely manner or the failure is harmless, it may not be used as evidence. Carolyn has provided no justification for her failure, and Primerica's inability to explore Baggett's assertions or counter them

precludes any possibility that the failure could be deemed harmless. Accordingly, the supplemental affidavit will be stricken.

Without the supplemental affidavit, the only testimony Baggett could give in this case would be limited to that advanced in the initial affidavit. In its entirety, Baggett's affidavit states the following:

> I have examined four documents purported to have been written and signed by Terrance Brown. For the purpose of this examination, I have labeled these exhibits " K1" [sic], "K2", "K3", and "K4". Today, I have compared the known signatures and handwriting of Terrance Brown on the "K" exhibits to a questioned document identified herein as "Q1", to determine if the same author signed Terrance Brown's name to the questioned document. It is my professional expert opinion that a different person authored the questioned document "Q1". Someone indeed forged Terrance Brown's name on the insurance agreement and authorization section on the "Q1" document. I am willing to testify to this fact in a court of law and I will prove to the court that my opinion is correct.

This affidavit is unquestionably inadequate to underlie expert testimony. First, it offers no hint of what comprised Baggett's comparison of the two documents; we have no information that would allow a determination of whether he employed any methodology at all, let alone whether it could be separated from "subjective belief or unsupported speculation." Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S. Ct. 2786 (1993). Second, he gives no explanation of the basis for or reasons behind his opinion that document Q1, the August 23 beneficiary change form, was forged. Baggett has provided no information whatsoever to enable this court to

assess whether it satisfies any of the criteria listed in Rule 702. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Mid-State Fertilizer Co. v. Exchange Nat'l. Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989); see also McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 657-58 (7th Cir. 1998).

Based on the materials provided by Baggett, we are simply to take his word blindly, which is not a course that we can or will follow. See Minasian v. Standard Chartered Bank, 109 F.3d 1212, 1216 (7th Cir. 1997). Even assuming that Baggett is qualified to render the opinion he states, a point on which we make no comment,[2] there is no indication that he applied any specialized knowledge or skills to the task he was asked to perform. See Huey v. United Parcel Serv., Inc., 165 F.3d 1084, 1087 (7th Cir. 1999). As the court in Minasian said, "an expert's report that does nothing to substantiate this opinion is worthless, and therefore inadmissible." Id. Thus, Baggett cannot offer any knowledge that would assist a jury in understanding the evidence or determining any facts in issue in this case, his testimony is not admissible under Rule 702.

---

[2] Because we cannot analyze the viability of Baggett's methodology as required by Daubert and its progeny, no purpose is served by examining whether his credentials would permit him to offer expert testimony.

**CONCLUSION**

Based on the foregoing discussion, the motion to strike the supplemental affidavit of Curtis Baggett and to exclude him as an expert witness is granted.

_/s/ Charles P. Kocoras_
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   April 29, 2006